## MARY L. TITUS v. BRADFORD ETC. R. CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF McKEAN COUNTY.

Argued May 9, 1890—Decided October 6, 1890.

[To be reported.]

1. From the fact that a particular method or appliance is dangerous, it does not follow that it is negligence for an employer to use it. Some employments are essentially hazardous; and the unbending test of negligence, in methods, machinery and appliances, is the ordinary usage of the business.

2. An employer performs his duty when he furnishes appliances of ordinary character and reasonable safety, and the former is the test of the latter. For, in regard to the style of the implement, or the nature of the mode of performance of a work, " reasonably safe " means safe, according to the usages, habits and ordinary risks of the business.

(a) In an action for the death of a brakeman, the negligence charged was the use of a particular broad-gauge car body upon a narrow-gauge truck, not adapted thereto. The carriage of broad-gauge cars upon narrow-gauge trucks, was a part of defendant's ordinary business, and cars like the one referred to had been carried quite often:

3. In the absence of proof that the carrying of this car, in the manner complained of, was an unusual occurrence on the road of defendant company, and the plaintiff's testimony showing that the brakeman accepted his employment with full knowledge of the practice of thus carrying such cars and the risks incident thereto, there could be no recovery for the injuries received.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 13 July Term 1890, Sup. Ct.; court below, No. 8 December Term 1888, C. P.

Statement of Facts.

On October 1, 1888, Mary L. Titus brought trespass against the Bradford, Bordell & Kinzua Railroad Company, to recover damages for the death of the plaintiff's minor son.   Her statement of claim averred that her said son, James Titus, on June 7, 1888, was in the employ of the defendant as a brakeman, and engaged in the performance of his duty as such on a freight train ; that in making up said train, the defendant negligently placed therein one or more broad-gauge cars, set on narrow-gauge trucks, and so heavily loaded as to be top-heavy, and negligently used on said car or cars " an unsafe, and not the best appliance, to wit, the flat centre plate," and by reason thereof the car overturned, and, falling upon the said James Titus, crushed him so that he died, etc.   The defendant pleaded not guilty.

At the trial on February 13, 1890, the following facts were shown :

The defendant was operating a narrow-gauge railroad between Bradford and Smethport, with branch lines to Kane and Eldred. At all the points named, the defendant's road connected with standard-gauge railroads, and a customary part of the defendant's business was the transportation over its road of loaded and unloaded freight cars belonging to such connecting roads. The means of effecting this was to transfer the car bodies, by a mechanical appliance known as a " hoist," from the standard-gauge trucks belonging to them to narrow-gauge trucks of the defendant.   The testimony tended to show that it was usual on other narrow-gauge railroads to make such transfers of car bodies in the same way.

Among the roads, whose cars the defendant was in the habit of receiving and transporting, was the New York, Pennsylvania and Ohio Railroad, known as the " Nypano. "   The construction of those cars differed somewhat from most of the standard-gauge cars handled by the defendant.   The centre plates of the bolsters on the bottom of the Nypano cars were partially oval, shaped somewhat like the bottom of a common saucer, and fitted into correspondingly shaped centre plates on the bolsters of the trucks.   The car bolsters were of iron, so shaped as to be eight or ten inches higher at their ends than in the middle.

Most of the standard car bodies handled by the defendant

Statement of Facts.

were from the Erie railroad, and had bolsters not unlike the bolster of a common farm wagon; but Nypano cars, with bolsters of the shape described above, were handled quite often. The defendant used what were called Hays trucks, fitted for carrying standard-gauge cars on narrow-gauge roads. The bolsters of these trucks, however, were straight from end to end, and had flat centre plates, and when a Nypano car body was placed on one of those trucks, the side bearings of the car and of the truck, respectively, would be about three inches apart. The result of this would be to permit the car to rock unduly when rounding a curve, and to guard against this, blocks of hard wood were fastened on the truck bolsters, sometimes being bolted on and sometimes secured by wrapping telegraph wire around them and the bolsters.

James Titus, the plaintiff's son, was employed by the defendant, for several months during the years 1887 and 1888, about the hoist at Bradford, and was familiar with its operation, having assisted in the transfer of cars from their own trucks to the defendant's trucks. In the spring of 1888 he went upon the defendant's road as a brakeman. On June 7th, of that year, he was on duty as one of the brakeman of a freight train passing over the defendant's road from Ormsby junction to Bradford. A Nypano car, No. 41,036, was taken into this train at Ormsby junction. Before this was done, the car was inspected by the conductor of the train and found to be in good order, so far as he could see. The truck bolsters had blocks on them secured by telegraph wire. The car was loaded with ground bark, put up in bags. This same car had been hauled over the road to Ormsby junction, about ten days before, in a train upon which Titus was serving as a brakeman. While on its way to Bradford, on the day given, the train was passing around a curve, at the rate of seven to ten miles an hour, when car 41,036 was observed to sway from side to side and afterwards to bounce as if off the rails. Titus had been sitting on the brake wheel on the top of the car, at its rear end. When it commenced to rock he started to run along the top of it, to get to the car in front, but before he could get that far, the car tipped over. He then jumped to one side and, falling on the track, was run over by the rear truck of the car and killed. After the accident, an examination of the trucks that had been

Charge of Court below.

under car 41,036, disclosed the fact that the wire fastening of one of the blocks had become loose, and the block had moved around so as to be partly out of place.

C. H. Morris, one of the plaintiff's witnesses, being asked to state whether or not a Nypano car upon a narrow-gauge truck, such as the one with which this accident occurred, was safe, answered: " A. Well, I had my doubts in regard to the plates of this truck. There have been many Nypano cars hoisted over and come back safe, but I never had any experience where the plate was like that, and I expressed my doubts that it would be safe. Q. State whether or not you think it was safe? A. In my opinion it was not."

One of the defendant's witnesses testified: " Q. Would you regard a train, made up of narrow trucks and wide gauge body, running over a road full of curves, and hilly, as safe as though they were narrow ones? A. No; I don't think it is as safe."

At the close of the testimony the court, OLMSTED, P. J., charged the jury in part as follows:

In a case of this kind, before a recovery can be had, it must be shown affirmatively, by competent evidence, that the accident occurred from the company's negligence, not contributed to by the deceased. . . . .

We have been requested to answer points for both sides, and we will do so now; for the plaintiff first.

1. Every one entering the employment of another has a right to assume that his employer has been guilty of no negligence, by himself or his agents, as to those things under his control which may affect the safety of such employee, and that he has omitted the performance of no duty in respect thereto which should have been observed by an ordinarily careful and prudent man. He has a right to assume this, and is not put to any particular investigation or inquiry.

Answer: We affirm this point.[1]

2. The master owes to every employee the duty of providing a reasonably safe place in which to work, and reasonably safe tools and machinery with which to work. This is a direct personal obligation.

Answer: We affirm this point.[2]

3. Ignorance in the master of defects in the instrumentalities

used by his servants, in performing his work, is no defence to an action brought by an employee who has been injured by them, when, by the exercise of proper care, the master could have discovered and remedied the defects.

Answer: We affirm this point.[3]

4. What is negligence and what is ordinary care must be submitted to the jury, if there be any dispute or reasonable doubt as to the facts claimed to establish the alleged negligence, or as to the inferences to be drawn therefrom.

Answer: We affirm this point.[4]

On behalf of the defendant we have been asked to charge you as follows:

2. The plaintiff having failed to show that the accident, in which the boy was killed, was caused by the negligence of the defendant, there can be no recovery in this case, and the verdict should be for the defendant.

Answer: We answer this point in the negative, as a general proposition.[5]

3. The evidence showing that James Titus, the boy killed, had an opportunity of knowing and did know,—having been employed on the hoist and as brakeman for several months,—the risks incurred in the use of these cars, and, by continuing his employment thereunder, accepted such risks, there can be no recovery in this case and your verdict should be for the defendant.

Answer: As a whole, connected proposition, we answer this point in the negative.[6]

4. That under all the evidence in this case, there can be no recovery by the plaintiff, and the verdict must be for the defendant.

Answer: We answer this point in the negative, because it is asking us to withdraw the case entirely from the jury, and we propose to submit some questions of fact to the jury.[7]

Now, gentlemen, it was the duty of this company to furnish for its employees a reasonably safe railroad track, suitable and reasonably safe cars, machinery and appliances. They were not required to furnish the very best that could be obtained. They must be suitable; such appurtenances as are used by persons of ordinary care and prudence; such as such persons do furnish to their employees.

Charge of Court below.

The contention of the plaintiff in this case is, that the company was negligent in using on this narrow-gauge road these standard car bodies, and particularly that it was negligent in using the New York, Pennsylvania & Ohio car body, described by the witnesses, constructed as it was at the time of the injury. You have heard the evidence. It has been somewhat lengthy upon this point, describing the method of the construction of the bolsters of this New York, Pennsylvania & Ohio car. And you have heard how it was fitted on the bolster of the narrow-gauge truck? Did the car tip over on the 7th of June, on account of the ill-adaptation of this car body to the truck? Were they safely and carefully secured each to the other, so as to operate together as a whole? Was the defendant ordinarily careful and prudent in using this car under the circumstances? If it was dangerous to use it under the circumstances, was it known to be dangerous by the deceased, without complaint to his employer? If he did know it, that it was dangerous, but continued in the service of the company, he assumed the risks and no recovery can be had. . . . . .

Did this car tip over there, at that time, by reason of the ill-adaptation of these cars to each other, by the extraordinary width of the New York, Pennsylvania & Ohio car body, and was there a defect in the blocking between these bolsters, in such a way as to make it not safe and ordinarily prudent to use it? If it was safe, there can be no recovery here; but if you should find that it was not ordinarily safe, to use a car body of that size upon a truck of that width, with such a load as was there, and that it was not properly and carefully secured to keep it from rocking and tipping over, and it tipped over from that cause, you might find that the accident was occasioned by the negligence of this railroad company.

But, if that was all true; if it was negligence of this company, did the deceased know that it was dangerous, and did he thereby assume the risk; or, was this one car especially dangerous, more than others? He may have known very well that they were in the habit of using standard bodies on the narrow-gauge trucks, and not considered that as especially dangerous; but, was this car more dangerous than others of that kind, and did he have knowledge that this one was dangerous, if he supposed the others were safe? If he knew this car was danger-

ous, and continued to assist in the transportation, and remained there, he cannot recover.

The whole question of negligence is for the jury, as we understand it. . . . .

The verdict of the jury was in favor of the plaintiff for $325. Judgment having been entered thereon, the defendant took this appeal, assigning for error:

1–4. The answers to plaintiff's points.[1 to 4]

5–7. The answers to defendant's points.[5 to 7]

*Mr. M. F. Elliott* (with him *Mr. D. H. Jack* and *Mr. D. L. Roberts*), for the appellant:

1. An employer has discharged his duty to a servant when he has furnished tools and appliances which, though not the best possible, may by ordinary care be used without danger; and having done this, he is not responsible for accidents: Pittsb. etc. R. Co. v. Sentmeyer, 92 Pa. 276; Northern C. R. Co. v. Husson, 101 Pa. 1; Payne v. Reese, 100 Pa. 306; Schall v. Cole, 107, Pa. 1; Lehigh Coal Co. v. Hayes, 128 Pa. 294; Phila. etc. R. Co. v. Keenan, 103 Pa. 124. By reason of the voluntary character of his engagement, the servant must be held to have assumed the risks of danger to himself that are necessarily incident to the character of the service: Payne v. Reese, supra; Lehigh Coal Co. v. Hayes, supra; Caldwell v. Brown, 53 Pa. 453. The court, by its answer to the plaintiff's third point, undertakes to say that the master is responsible for all defects in the instrumentalities used by the servant, although he may have provided competent servants to inspect them who have neglected to perform their duty. This is erroneous: Sykes v. Packer, 99 Pa. 465; Patterson's Ry. Acc. Law, 367.

2. An employee, who has had an opportunity to become acquainted with the risks of his situation and continues in the employment, thereby accepts those risks and cannot complain if subsequently injured by exposure to them: Brossman v. Railroad Co., 113 Pa. 490; Rummell v. Dilworth, 111 Pa. 343. If the machinery furnished contain obvious defects, of which the servant knows or as a reasonably prudent man might know, he cannot recover for injuries resulting therefrom: Schall v. Cole, 107 Pa. 1; Sykes v. Packer, 99 Pa. 465; Ryan v. Rail-

road Co., 23 Pa. 384.   If the defect be of such a character, or occur at such a time, that the master cannot reasonably be expected to have knowledge of it, it is the servant's duty to give him notice, and the neglect of such duty exempts the employer from responsibility : Patterson v. Railroad Co., 76 Pa. 389.   The burden was upon the plaintiff to show against the defendant a case of negligence clear of any contributory negligence on the part of the deceased, and as she did not do this, the court should have directed a verdict for the defendant : Lehigh Coal Co. v. Hayes, 128 Pa. 294; Phila. etc. R. Co. v. Hughes, 119 Pa. 301 ; Phila. etc. R. Co. v. Schertle, 97 Pa. 450; Pittston Coal Co. v. McNulty, 120 Pa. 414.   When the facts are not disputed, the question of the defendant's negligence is for the court : Koons v. Telegraph Co., 102 Pa. 164.

*Mr. Eugene Mullin,* for the appellee, presented no paper-book.

OPINION, MR. JUSTICE MITCHELL :

We have examined all the testimony carefully, and fail to find any evidence of defendant's negligence.   The negligence declared upon is the placing of a broad-gauge car upon a narrow-gauge truck, and the use of " an unsafe, and not the best appliance, to wit, the flat centre plate ; " or, as expressed by the learned judge in his charge, in using on the narrow-gauge road the standard car bodies, and particularly the New York, Pennsylvania & Ohio car body described by the witnesses. But the whole evidence, of plaintiff's witnesses as well as of defendant's, shows that the shifting of broad-gauge or standard car bodies on to narrow-gauge trucks for transportation, is a regular part of the business of narrow-gauge railroads, and the plaintiff's evidence makes no attempt to show that the way in which it was done here was either dangerous or unusual. Haleman says the majority of the bearings fit, and those that do not, have hard-wood blocks put under them, and the blocks are fastened with telegraph wire, and he was not positive but that some were bolted on.   The particular car complained of was blocked and wired.   Cazely and Richmond say it was the custom to haul these broad-gauge cars on the narrow-gauge trucks, though most of the broad-gauge were Erie cars, of a somewhat different construction ; and Morris says the car in

question was put on a Hays truck, fitted for carrying standard-gauge cars on a narrow-gauge road, and that this particular kind of "Nypano" car was so hauled quite often. These are plaintiff's own witnesses, and none of them say the practice was dangerous. The nearest approach to such testimony is by Morris, who says he " had his doubts."

But, even if the practice had been shown to be dangerous, that would not show it to be negligent. Some employments are essentially hazardous, as said by our Brother GREEN, in North. C. Ry. Co. v. Husson, 101 Pa. 1, of coupling railway cars ; and it by no means follows that an employer is liable " because a particular accident might have been prevented by some special device or precaution not in common use." All the cases agree that the master is not bound to use the newest and best appliances. He performs his duty when he furnishes those of ordinary character and reasonable safety, and the former is the test of the latter; for, in regard to the style of implement or nature of the mode of performance of any work, " reasonably safe " means safe according to the usages, habits, and ordinary risks of the business. Absolute safety is un-attainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence ; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, com-monly adopted by those in the same business, is a negligent way for which liability shall be imposed. Juries must neces-sarily determine the responsibility of individual conduct, but they cannot be allowed to set up a standard which shall, in effect, dictate the customs or control the business of the com-munity.

In Ship-building Works v. Nuttall, 119 Pa. 149, our Brother WILLIAMS said : " The testimony shows that such an attach-ment is not in general use. . . . . It is not enough that some persons regard it as a valuable safeguard. The test is, general

use. Tried by this test, the saw of the defendant was such a one as the company had a right to use, because it is such as is commonly used by mill owners, and it was error to leave to the jury any question of negligence based on the failure to provide a spreader." See, also, Payne v. Reese, 100 Pa. 306; Sykes v. Packer, 99 Pa. 465; Allison Mfg. Co. v. McCormick, 118 Pa. 519; and Lehigh Coal Co. v. Hayes, 128 Pa. 294.

As already seen, the testimony of plaintiff's own witnesses showed the custom of the appellant company to perform this part of its work in the way complained of. The defendant's witnesses showed the custom of at least two other narrow-gauge roads to use the same way. There was no countervailing evidence on part of plaintiff, though, as was said in the closely analogous case of North C. Ry. Co. v. Husson, 101 Pa. 1, "it was certainly a part of the duty of the plaintiff to affirmatively establish that the loading of cars in the manner complained of was an unusual occurrence." In the absence of such evidence, the defendant's last point should have been affirmed, and a verdict directed for the defendant.

It is also entirely clear that defendant's third point should have been affirmed. The deceased had been a brakeman on this train for five or six months, during which this mode of carrying broad-gauge cars had been used; cars similar to the one on which the accident occurred had been frequently carried, and that very car at least once, about ten days before. He not only thus had ample opportunity to know the risks of such trains, but he had his attention specially called to the alleged source of the accident, by having worked, just before becoming a brakeman, on the hoist by which the car bodies were transferred to the trucks. It was a perfectly plain case of acceptance of an employment, with full knowledge of the risks.

Judgment reversed.