## L. MOULES v. DEL. & H. CANAL CO.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF WAYNE COUNTY.

Argued February 25, 1891—Decided April 20, 1891.

The test of the liability of an employer, for injuries received by an employee in the performance of his duties, is negligence, not danger; † and when the evidence submitted discloses no negligence of the employer, from which the injuries resulted to the plaintiff, the trial court should direct a verdict for the defendant.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

---

* The entire "Index" to the appellant's paper-book in this case was as follows:

INDEX.

† See Ford v. Anderson, 139 Pa. 261.

No. 154 January Term 1891, Sup. Ct.; court below, No. 323 May Term 1889, C. P.

On August 12, 1889, Laura Moules brought trespass against the Delaware & Hudson Canal Co., to recover damages for negligence resulting in the death of the plaintiff's husband, A. Moules. Issue.

At the trial on March 21, 1890, the case presented was to the effect that the deceased was employed as the conductor or runner of a coal train on the defendant company's railroad between Waymart and Honesdale, and had been in such employment for seventeen years. The railroad is a gravity road. The trains are drawn up incline planes by stationary engines operating endless ropes, to which they are attached by a short chain called a sling, hooked into a link in the rope. From the head of a plane the roadway will have a descending grade, for a distance greater or less, upon which the trains are allowed to run by their own weight. These portions of the road are called "levels." The trains of "empties" returning to Waymart, composed of from 48 to 96 cars, are manned by three runners, the chief of whom is called the conductor. They are drawn up the planes in sections of about twelve cars each, called "trips," each trip in charge of a runner, the conductor going up as the runner of the last trip. In ordinary weather, after reaching the head of the plane each section proceeds on its way to Waymart. In stormy weather, the trips are stopped a short distance from the head of the plane under a shed several hundred feet long, where they are coupled together and thus proceed on their way.

On January 7, 1889, about noon, Moules's train, consisting of 48 empties, reached the foot of plane 17. The day was stormy. The first runner, Henry Sohn, took up two trips of twelve cars each, and by direction of John Ryan, the defendant's foreman or superintendent, stopped them in the shed for the remainder of the train. Ambrose Hoyle followed with a trip of twelve cars, ran into the shed, coupled his cars to Sohn's cars, and put down a brake at the rear to hold them. He then started back to warn Moules, but Ryan stopped him and sent him to the front of the train to attend to another duty. Moules reached the head of the plane with the last trip of twelve cars,

Charge of Court below.

unhooked them, and stood or sat on one of the cars with his face to the rear, to avoid the storm blowing in the opposite direction. His trip ran down the level about 150 feet and collided with Hoyle's trip, when he was thrown between two cars and fatally injured. Ryan and George Merethew helped him to a shelter, when Ryan asked him if he had looked ahead. To this he replied, " No, I didn't ; I don't know when I missed it before, and I don't know what made me then."

At the close of the testimony, the court, SEELY, P. J., after stating generally the rules as to negligence and contributory negligence and reviewing the facts disclosed by the testimony, charged the jury in part as follows :

If there is any negligence at all here, it must arise out of the custom of the company not to send back flagmen to warn men who come up the plane, or out of the particular order that Ryan gave on this occasion. And we say to you further that, if it appears in the evidence that Mr. Moules knew that the custom of this defendant was not to have the trips flagged as they came up the plane, and he undertook to run his cars in view of that custom or arrangement, then he cannot complain of that custom or arrangement of the Delaware & Hudson Canal Company. In other words, we think that it is the duty of any person engaged in a hazardous business, if he sees a cause of danger existing—an unnecessary cause of danger—to go and complain of that unnecessary cause of danger to his superior officers, and ask them to remove it, and to make his position as safe as it can reasonably be made. And if he does not call the attention of his superior officers to it and ask that it be removed after he himself has knowledge of it, he cannot afterward, if he is injured by reason of that danger, set it up as a basis of recovery against his employer. These are, so far as I now remember, the two conditions out of which the plaintiff alleges the negligence on the part of the company. That is, the failure to signal or warn him, and the absence of a headman.

As to the want of a headman, it is proper to call your attention to some testimony to the effect that Mr. Merethew said in Mr. Purdy's office that if there had been a headman there the accident would not have happened. Whether it be true or

Charge of Court below.

not that if there had been a headman there the accident would not have happened, Mr. Moules knew perfectly well that there was no headman there, and he had known it before, and if he felt that it was an element of risk he should have complained and called upon the company to correct it, and if he failed to do so he cannot complain that the injury occurred by reason of that fact. So we think that the question of negligence must be based upon the method of managing the trips at the head of the plane; whether it was such a method as furnished reasonable protection to the trainmen, when they themselves exercised ordinary care and prudence.

And in that connection you may consider all the evidence. You have a right to take into consideration the length of time that this road has been operated in this way. One of the witnesses testified that so far as he knew there was no other accident ever occurred at this place. The defendant alleges that they were not negligent in either of these respects, and insists that Mr. Moules himself was negligent. You have the evidence as to the location of this plane, the surroundings, the visibility of the track at the top of the plane, and how easily the snow sheds can be seen after you come over the top of the plane and start out upon the grade. You have also the evidence as to the storm on this day, and its severity. You have the evidence of different persons as to how they could see in going up the plane on that day. The evidence as to the condition of the storm at the very time that Mr. Moules came up is somewhat vague. There is no evidence as to whether the storm at that time had increased or diminished, or what the character of the storm was at that time.

Some of the witnesses testify that the storm was changeable, blustering, and sometimes quite severe, and at other times much lighter. But there is no evidence as to what the condition of the storm was, at the precise time when Mr. Moules came up the plane. After he came over the head of the plane, and unhooked his sling, and put it on the car, and performed his other duties there, we think that we should say to you without hesitation that it was his duty to be where he could look out ahead of his car. We do not think that it required any evidence to establish such a duty. He was alone upon this trip of cars, and was the only one to observe danger ahead.

If he is not upon the lookout, no one is, and whatever dangers might lie in the way—and there is always danger in running cars—must be unobserved, unless they were observed by him. In addition to that, you have the evidence as to what the custom and duty of those men are, as they come up the plane and pass out on the level.

Under these circumstances, what did Mr. Moules do? You have the evidence of the witnesses as to his statement made after he was injured. Without trying to repeat the language, we think the substance of the testimony of Mr. Ryan and Mr. Merethew upon this subject was that Mr. Moules said that he was not looking ahead, at the time. You will remember that statement as it was given by the witnesses, and not take the memory of the court. The credibility of the witnesses is for you. You have also the evidence of Mr. Merethew as to what he saw after Mr. Moules had reached the head of the plane and passed over the angle. This evidence has been discussed somewhat by the counsel, and because it is the only evidence bearing directly upon Mr. Moules's conduct just before the accident, I have had it transcribed and will read it to you. . . . .

The defendant's counsel have submitted certain points in writing, asking us to instruct you as follows:

1. Liability to accidents, such as that in which the plaintiff's husband lost his life, was one of the ordinary risks of his employment, and there can be no recovery for injuries resulting therefrom, without proof of some neglect of duty on the part of the employer which increased the danger.

Answer: We affirm this point with this remark: The point says "liability to accidents such as that in which the plaintiff's husband lost his life." If it refers to the peculiar nature of this particular accident, it might be a question. But, as afterward in this point the defendant asks us to say that a recovery cannot be had without proof of some neglect of duty on the part of the employer which increased the danger, we under-stand the point to refer to accidents and collisions of this general character, in which cars come together and injuries are occasioned; and so understanding it we affirm it.[5]

2. There is no evidence that the death of the plaintiff's husband was caused by the negligence of the defendant, and therefore the plaintiff cannot recover.

Charge of Court below.

Answer: This raises a question of fact, and we decline to affirm it, because we decline to interfere with the duties of the jury in this matter.[6]

4. If the plaintiff's husband, after unhooking his trip and hanging up his sling, neglected to look toward the snow-shed where the cars of Sohn and Hoyle were standing, there being nothing to obstruct his view of the shed and cars, and rode with his face towards the rear of the trip on which he stood, he was guilty of contributory negligence, and the plaintiff cannot recover.

Answer: We have already commented upon this situation, and we think that this point cannot be affirmed, because if he rode ten feet backward, everything that is contained in this point would be found. But we may say this, that if he rode so far, and to such a point backward that his so riding combined with other circumstances to produce the accident, then that would be contributory negligence and he could not recover.[7]

5. The evidence is uncontradicted of the acts of negligence on the part of the plaintiff's husband described in the preceding point, and therefore the plaintiff cannot recover.

Answer: I think there are no contradictory witnesses, but the credibility of the witnesses is for you. And when a point is developed in the evidence for the defence, even though the evidence may not be contradicted, we still think that it is not the province of the court to pass upon that evidence as a matter of fact, and therefore we decline to affirm this point.[8]

6. The uncontradicted evidence shows negligence on the part of the plaintiff's husband, which contributed to the accident in which he lost his life, and therefore the plaintiff cannot recover.

Answer: We decline this for the same reason. We think the case reaches out beyond the province of the court, and that questions are in it which arise under the evidence, and which must be submitted to the jury.[9]

7. Under all the evidence, the verdict must be for the defendant.

Answer: We decline to affirm this point for the same reason.[10]

—The jury returned a verdict in favor of the plaintiff for

$1,200. Judgment having been entered, the defendant took this appeal, assigning for error inter alia:

5–10. The answers to the defendant's points.[5 to 10]

*Mr. H. Wilson* and *Mr. P. P. Smith*, for the appellant.
Counsel cited: Pittsb. S. Ry. Co. v. Taylor, 104 Pa. 306.

*Mr. Geo. S. Purdy*, for the appellee.

OPINION, MR. JUSTICE MITCHELL:

We fail to find in this case any evidence of defendant's negligence, nor is it easy to ascertain with precision just what negligence is charged. The learned judge put it to the jury entirely on the method of managing the trips at the head of the plane,—whether it was such as furnished reasonable protection to the trainmen; while the argument of appellee here rests mainly on the action of Ryan in stopping Hoyle, when about to go back for the purpose, as he alleged, of notifying Moules. Appellee also argues negligence from the absence of a headman on that day; but as the evidence showed without contradiction that it was not usual to have a headman, and that when he was there it was not to give notice to train runners, but for entirely different duties, the learned judge below properly excluded this question from the consideration of the jury, and we need not discuss it here.

There was no evidence on which the jury could properly find that the method of managing the trips was negligent. We have had occasion several times lately to say that the test of liability of an employer to an employee is negligence, not danger, but here there was no evidence even of danger to a man of reasonable prudence. What Moules had to do was to unhook the sling, ring the bell to notify the engineer, and get on the car again so as to control the brake, if necessary. During this operation, the cars were moving, as Hoyle, the plaintiff's mainstay and certainly a friendly witness, says, " a little faster than a common man could walk," and " there was no difficulty in getting on or off." This method had been followed for years, without accident, and as a part of the business of railroading it certainly could not be said to be inherently dangerous. In this particular case the deceased had been employed

### Opinion of the Court.

at this work seventeen years, and was entirely familiar with it; the other cars with which his collided were in plain sight; both Sohn and Hoyle, who preceded him by a few minutes, had brought their trips up, under the same circumstances, without difficulty; and the uncontradicted evidence on plaintiff's own part was that, even if the deceased had not seen the cars until close at hand, there was no difficulty in jumping off so as to avoid personal injury from the collision. To allow a jury, under these circumstances, to find that the method of operation was negligent, as well as dangerous, would be not only allowing them, as said in Titus v. Railroad Co., 136 Pa. 618, to dictate the customs and control the business of the community, but to do so without evidence.

But was Ryan negligent in stopping Hoyle on his way back to notify Moules? Hoyle says he did not inform Ryan of his intention in going back. There was therefore no express notice to Ryan of Hoyle's intention. Nor could notice be implied from custom, for no custom was proved. The only evidence bearing on that point was given by Hoyle in rebuttal. It was not properly rebuttal, but the very essence of plaintiff's case; but, taking it as it was given, it amounts to no more than evidence of the witness's individual habit, not adopted by other train runners and not known to Ryan. Nor, lastly, could any obligation upon Ryan in regard to notice to Moules arise from the danger of the situation. The matter of danger has already been discussed. It was usual on stormy days to stop the cars at that point and double up the trains. Moules knew the custom, for he had been engaged seventeen years in this work. Whether or not that day was one calling for doubling up, was a matter to be determined by Ryan, and Moules knew this and was bound to be on the lookout accordingly. Even if there was no actual necessity for doubling, and Ryan made an error of judgment in ordering it, of which there is no evidence whatever, it would not have been negligence. The honest exercise of his judgment by a competent employee in the course of his employment, can never be negligence to make the employer liable to a co-employee. This branch of the case has been discussed on the concession that the defendant would be liable for Ryan's negligence. If it were necessary, that point might at least be questioned.

On the whole case there was no negligence proved, and defendant's seventh point should have been affirmed.

Judgment reversed.