# Cutler *v.* Morrison, Appellant.

*Negligence—Roofing—Fall of bucket of pitch—Evidence.*

1. In an action to recover damages for personal injuries to a child caused by the fall of a bucket of hot pitch from a roof which was being repaired, the case is for the jury, and a verdict and judgment for the plaintiff will be sustained, where it appears that there were two usual methods employed for preventing buckets of pitch from falling in a roofing operation, and that neither method had been used to secure the bucket in question and prevent its fall upon the child.

2. In such a case if the fall of the bucket was caused by the fall of the workman who lost his balance while carrying the bucket, the employer of the workman will be responsible if it appears that the accident happened from his negligence in failing to provide a reasonably secure way for his workman to travel.

Argued Oct. 21, 1909. Appeal, No. 159, Oct. T., 1909, by defendant, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1906, No. 4,181, on verdict for plaintiff in case of Charles Cutler, by his father and next friend, Frank Cutler, and Frank Cutler in his own right v. Andrew G. Morrison. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before KINSEY, J.

56    CUTLER v. MORRISON, Appellant.

The circumstances of the accident are stated in the opinion of the Superior Court.

The defendant presented these points:

1. The jury must find a verdict for defendant. *Answer:* Refused. [1]

2. If the jury find the plaintiff's injury was suffered by the falling of the contents of the pitch bucket by the accidental fall of the workman who lost his balance while carrying the pitch, they must find for defendant. *Answer:* Refused. [2]

Verdict and judgment for Charles Cutler for $300, and for Frank Cutler $100. Defendant appealed.

*Errors assigned* were above instructions, quoting them.

*E. Spencer Miller,* for appellant.—The proof failed to show negligence: Spees v. Boggs, 198 Pa. 112; Zahniser v. Torpedo Co., 190 Pa. 350; Stearns v. Spinning Co., 184 Pa. 519; Higgins v. Fanning & Co., 195 Pa. 599; Diver v. Mfg. Co., 205 Pa. 170; Guille v. Campbell, 200 Pa. 119; Phila. & Reading R. R. Co. v. Adams, 89 Pa. 31; Marsh v. Giles, 211 Pa. 17; White v. Roydhouse, 211 Pa. 13; Heister v. Fawn Twp., 189 Pa. 253; Ohl v. Bethlehem Twp., 199 Pa. 588; Ford v. Anderson, 139 Pa. 261; Kilbride v. Carbon Dioxide, etc., Co., 201 Pa. 552; Wall v. Lit, 195 Pa. 375.

*Maurice Rose,* with him *Enoch W. C. Greene,* for appellee.—The case was for the jury: Frankford, etc., Turnpike Co. v. Philadelphia, etc., R. R. Co., 54 Pa. 345; Crissey v. Hestonville, etc., Pass. Ry. Co., 75 Pa. 83; Pennsylvania R. R. Co. v. Ogier, 35 Pa. 60; North Pennsylvania R. R. Co. v. Kirk, 90 Pa. 15; Spear v. P., W. & B. R. R. Co., 119 Pa. 61; Cougle v. McKee, 151 Pa. 602; Holland v. Kindregan, 155 Pa. 156.

OPINION BY HEAD, J., July 20, 1910:

The defendant had undertaken to put a new coat of hot

pitch on the roof of the dwelling house known as No. 939 South Sixth street in the city of Philadelphia. The roof was steep, its ridge running parallel with the street. Each of the slopes, the one fronting the street and the other the rear, was pierced by a dormer window. At the time of the occurrence to be related the workmen had completed the slope of the roof facing the street and were engaged in applying the pitch to the slope facing the rear. The pitch was heated in a tank or caldron on the side of Sixth street opposite to the house. A workman would fill a bucket with this boiling fluid and carry it across the street to the foot of the house wall. Another workman was on the roof above. It appears to have been his duty to lower a rope with a hook on the end of it and, when the bucket was attached, to hoist it by hand to the edge of the roof on which he stood. Having detached the rope, he then carried the bucket along this roof edge to the dormer window, and passing through it and the attic of the house, delivered the bucket of pitch at the other side of the building where it was being applied. In doing the work according to this plan, there was no protection arranged either for the bucket or the workman. About the middle of the day two children, one of whom is the plaintiff, were sitting or playing about the doorstep of the house two doors above the one mentioned and on the same side of the street. Suddenly, both the bucket of pitch and the workman who had hoisted it to the roof fell to the pavement, the hot contents of the bucket were distributed in every direction and a considerable quantity of it unfortunately struck the plaintiff who was badly burned. It being alleged that the injury was caused by the carelessness of the defendant's employees, this action was brought to recover damages.

The testimony is not entirely clear as to just how the accident occurred. That offered by the defendant would tend to show that the workman, while walking along the edge of the roof with the bucket of pitch in his hand, lost his footing and fell to the street, carrying the bucket with him. But the evidence produced for the plaintiff, if believed, would tend to show that the bucket was hoisted to the roof and was resting

there at the point where the slope of the roof joined the gutter. Either because of its insecurity, or because it was disturbed by the foot of the workman, the bucket fell. Whether he had lost his footing before he touched the bucket, or whether it was because of his anxiety to secure it before it fell over, that he himself fell is a matter not free from doubt.

The able counsel for the appellant first undertakes to convict the learned trial court of error because he refused to direct a verdict in favor of the defendant on the ground that no negligent act or omission, on the part of the defendant, had been shown. The principle upon which he relies, and to establish which he cites many cases, may be summed up in the following language from the opinion of the Supreme Court in Titus v. Bradford, etc., Railway Co., 136 Pa. 618: "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. Conceding the correctness of this principle, how does the application of it to the facts testified to in this case leave the defendant? Two witnesses were called by the plaintiff, each of whom was a man of wide experience in that kind of work. Each of them described two methods in general use by those undertaking such work. The purpose in view in using either one of them is thus declared by the witness Rose: "Q. What are the purposes of those two methods you have described? A. To protect passers-by and protect the men working on the roof. It is impossible with those protections for a bucket of pitch to turn over. In the first place you have the weight of the bucket that keeps it on the level surface, then you have that backboard it leans up against." The other witness, describing the purpose of adopting either one of the methods referred to, said, "It takes a good bit to kick it [the bucket] over if it stands on a level, but if it stands on a slant it will go over as soon as you touch it."

The two methods thus testified to be in general use may be briefly described as follows: The first consisted in the use of a ladder called a "chicken ladder." This ladder rested against an upright board or plank nailed to the edge of the roof and stretched up along its slope to or towards the ridge. It was equipped with a substantial board or plank of sufficient width to hold the bucket, and so arranged that the bucket would always stand on a level, no difference how great the slope of the roof. This rest could be moved from portion to portion of the ladder so that the workman could have it at any height at which he desired to use it. The other method consisted in securing a perpendicular strip of lumber of sufficient height along the edge of the roof. A board or plank would be laid from this to the slope of the roof in such manner as to furnish a level and even footway for the workman and a secure resting place for his bucket of pitch, and it appears to have been so constructed that the perpendicular piece always projected a distance above the footway, thus forming as it were a guard rail for the protection of the bucket.

As already stated, neither of these plans was in use at the time and place of the accident. It is true the workmen were equipped with a chicken ladder. They had used it while spreading the pitch on the slope of the roof next the street and were using it on the rear slope at the time of the accident, but the workman who was hauling up the hot pitch, and had to transport it along the sloping roof and immediately above the traveled highway, was provided with nothing to guard against the likelihood of such an accident as actually happened. Under this state of facts, it seems clear enough to us that the plaintiff had shown a case outside of that class relied on by the learned counsel for the appellant, of which Titus v. Railway Co., 136 Pa. 618, is an illustration. Had the second method above described been used, the workman on the roof would have had not only a secure place to rest his bucket while he detached and disposed of the hoisting rope, but a level and comparatively safe place on which to walk to the dormer window. Had he been provided with a chicken ladder, the bucket would not have been easily overturned by any unin-

tentional movement on his part while preparing to carry it. No explanation at all is offered why the bucket was not hoisted at the dormer window and the perilous journey along the roof edge thus entirely avoided. In any event, accepting the testimony for the plaintiff as true, the jury could have found that by the adoption of precautions in general use in that business, the accident in all probability would not have occurred. The first assignment of error must therefore be dismissed.

The second assignment of error complains of the refusal of the learned trial judge to affirm the defendant's second point, which was as follows: "If the jury find that the plaintiff's injury was suffered by the falling of the contents of the pitch bucket, by the accidental fall of the workman who lost his balance while carrying the pitch, they must find for the defendant." We do not think the proposition advanced by the point is necessarily or universally true. If the fall of the workman was purely accidental, within the legal meaning of that word, that is to say, without negligence upon his own part or that of his employer, then the conclusion might be correct. But if the fall were accidental only in the sense that it was not intentional, but if at the same time it resulted from the manifest negligence of the employer in failing to provide a reasonably secure way for his workmen to travel, then we do not think the court could have properly so instructed the jury. Taking the refusal of the point in connection with the instructions exhibited in the charge as a whole, we are not able to discover any reversible error on the part of the learned trial court. This assignment therefore must also be overruled.

The third assignment is but a formal complaint of the act of the court in entering judgment on the verdict. If we are correct in holding that the plaintiff exhibited a case that the court was bound to submit to the jury, and if the instructions under which it was submitted were free from error, it would follow this assignment could not be sustained.

Judgment affirmed.