# UNITED STATES EXPRESS COMPANY *v.* BALL.

---

CONTRACTS; EVIDENCE; RELEASE; NEGLIGENCE; MASTER AND SERVANT.

1. General words in a release are to be limited and restrained by particular words in the recital.

2. Death from injuries received by the engineer in charge of the engines of a city garage and power plant of an express company, from the falling of an alleged negligently constructed chimney built to carry off the gas from such engines, is not covered by a release given by the decedent upon entering such employment, reciting that he understood he might be required to render services for the company on and about transportation lines used by it for forwarding property, and assuming the risk of all accidents and injuries which he might sustain in the course of his employment, whether occasioned by negligence, and whether resulting in his death or otherwise.

3. Where the engineer of an express company in charge of stationary gasoline engines installed and used by the company in its premises to charge its automobiles used for delivery purposes, was killed by the falling of a brick chimney forming a part of the plant and used to carry off the burnt gases from the engines, in an action by the administratrix of the deceased to recover damages for his death, it is

error for the trial court in its instructions and charge to the jury to limit them to the consideration of the single question of whether the chimney was an unsafe device, and to refuse instructions asked by the defendant to the effect that it was not an insurer of the safety of the structure and of the deceased, and was liable only if it was negligent in the adoption of the design of the chimney, its construction, and in the use thereof. (Citing former appeal in same case, 32 App. D. C. 177.)

4. An employer in experimenting with a new and untried device may be chargeable with negligence, but it does not follow as a conclusion of law that he is so chargeable.

5. An employer, before adopting and installing a new and untried appliance, is required to select that which seems to be the safest and most suitable for his purpose, and to consult the best available known sources of information for reliable advice as to the wisdom of the proposed experiment. A failure to take these precautions, should the device selected prove defective and an accident occur from its use, will be regarded as proof of negligence.

6. An employer who experiments with a new and untried device is required to exercise a much higher degree of care than if the device were in common use.

7. Where an employee is advised of the unusual character of a structure, he is required to use a higher degree of skill and care than would devolve upon him in using a tried and tested device.

8. Though the degree of care varies with the hazard of the employment, the duty at all times devolves upon the employer of selecting and installing the best and safest appliances commonly used in the line of work in which he is engaged, and of exercising that degree of care for the safety of his employees which ordinary prudence requires of those engaged in the same line of business.

No. 2209. Submitted December 12, 1910. Decided January 3, 1911.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on verdict, in an action to recover for the death of the plaintiff's intestate.

*Reversed.*

The facts are stated in the opinion.

*Mr. A. A. Birney* and *Mr. Henry F. Woodard* for the appellant.

*Mr. Daniel W. Baker, Mr. Joseph C. Sheehy,* and *Mr. Frank J. Hogan* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This action was brought in the supreme court of the District of Columbia by appellee, Minnie T. Ball, administratrix of the estate of John T. Ball, hereafter referred to as plaintiff, to recover damages for the death of her husband, John T. Ball, caused by the alleged negligence of the appellant, the United States Express Company.

The declaration alleges in substance that the defendant company occupied a certain building in the city of Washington for the purpose of storing automobiles and charging them with power, to be used in the conduct of its business as an express company.   Plaintiff's intestate was employed by defendant in this building as an engineer.   It is further alleged that while so employed defendant company "carelessly, negligently, and unskilfully erected or caused to be erected, a certain chimney on the aforesaid premises for the purpose of carrying away gases and smoke and thereafter, on the date aforesaid, carelessly and negligently used and maintained said chimney so carelessly, negligently, and unskilfully erected or caused to be erected as aforesaid, so that by reason of said careless, negligent, and unskilful erection, use, and maintenance of said chimney, excessive and dangerous smoke and gases accumulated in said chimney and in the pit thereunder;" and that, by reason of the accumulation of smoke and gas, an explosion occurred with sufficient force to shatter the base of the chimney, causing it to fall on the engine house.   A portion fell through the skylight, striking Ball and killing him.

In response to a motion of counsel for defendant, plaintiff attached to her declaration a bill of particulars in which the alleged negligent acts of the defendant company were specified as follows:   "The negligence and unskilfulness in the erection of said chimney consisted of the placing, or allowing to be placed, therein a number of baffle plates and the topping of

said chimney with a perforated sheet-iron pipe which was capped; these combined causes, or either of them, were such as to prevent dangerous gases to have the free exit which was necessary to safety, and constituted the alleged defect. The defendant was negligent in the use of said chimney by connecting it with defendant's engines and pits, and in operating said engines so connected with said chimney so designed and erected in the dangerous manner aforesaid, the direct effect of which was to cause an accumulation of gases in and at the base of said chimney and in said pits."

To the declaration defendant entered a plea of not guilty, upon which issue was joined. The case was tried to a jury, and a verdict returned for the plaintiff. From the judgment entered thereon, this appeal was taken.

It appears that, for the purpose of charging the automobiles, defendant had installed in its garage two internal combustion engines. The fuel used was coal oil, which was vaporized by passing over a heated ball. This process was accomplished by means of a pump attached to the engines. The vapor thus formed constituted a gas which, when exploded in the cylinders of the engines, provided the motive power for the operation thereof. The engines were provided with necessary pipes which carried the escaping gas, burned and unburned, into a pit under the floor of the engine room. To convey the gas from the pit, a brick chimney had been erected by defendant. The chimney was constructed 53 feet high, in the usual manner of constructing brick chimneys. On the top of the chimney there was a 9-foot circular iron stack with holes perforated in the side, the top of which was closed by a solid iron cap. Inside the chimney there were placed 6 cast-iron baffle plates situated alternately on opposite side of the chimney, the first plate being placed 4 feet from the base and the other 5 consecutively above, in distance 4 feet, 6 inches, from each other. These plates, with the perforated iron stack, formed a partial obstruction in the inside of the chimney, reducing the draft area about 70 per cent. The pit into which the gas was forced from the engines was connected with the base of the

chimney by an 8-inch circular opening through which the gas passed from the pit into the chimney, and thence through the tortuous passage and the perforations to the open air. The baffle plates seem to have been placed in the chimney for the purpose of muffling the sound that was caused by the escaping gas.

The first assignment of error necessary to be considered relates to the refusal of the court to admit an application for employment made and signed by plaintiff's intestate at the time he engaged his services to the defendant company. It is insisted by counsel for defendant that, by the terms of this application, Ball released the company from any liability for injuries that might result from his employment. The material part of the application relied upon is as follows: "I understand that I may be required to render services for the company on and about the railroad, stage, and steamboat lines used by the company for forwarding property, and that such employment is harzardous. I assume the risk of all accidents and injuries which I may sustain in the course of my employment, whether occasioned by negligence, and whether resulting in my death or otherwise. I agree to hold the company harmless from any and all claims that may be made against it arising out of any claim or recovery on the part of myself, or my representatives, for damages sustained by reason of my injury or death, whether such injury or death result from negligence or otherwise. I agree to pay to the company, on demand, any sum which it may be compelled to pay in consequence of any such claim. I will execute and deliver to the corporation or persons owning or operating the transportation line upon which I may be so injured, a good and sufficient release, under my hand and seal, of all claims, demands, and causes of action arising out of any such injury, or connected with or resulting therefrom. I ratify all agreements made by the company with any transportation line in which the company has agreed, or may agree in substance, that its employees shall have no cause of action for injuries sustained in the course of their employment upon the line of such contracting party, and I agree to be bound

by each and every of such agreements, so far as the provisions thereof relative to injuries sustain by employees of the company are concerned, as fully as if I were a party thereto. The provisions of this agreement shall be held to inure to the benefit of any and every corporation and person upon whose transportation line the company shall forward merchandise, as fully and completely as if made directly with such corporations or persons."

This application was objected to on the ground that the writing was incomplete and incompetent, irrelevant and immaterial, and, even though complete, was void. The objection of incompleteness is based upon the fact that a blank form of contract of employment attached to the application was not filled out or signed, though it contained blank spaces for the signatures of both Ball and the defendant company. This objection, however, need not be considered. Neither are we required to pass upon the question of whether or not such a contract, if properly executed, would be void as against public policy. It is sufficient that the application has no reference to the kind of employment in which plaintiff's intestate was engaged at the time of his death. The application refers specif-ically to employment in connection with the defendant company's business on and about railroad, stage, and steamboat lines. Although there are general words in the application which would possibly, if they stood alone, bear the construction of a general release, these, we think, are limited and controlled by the recital of the specific employment to which the release was evidently intended to apply. The rule is that where the words in the recital apply to a particular kind or class of employment, as in this case railroad, stage, and steamboat lines, the general words will be limited and restrained by the words in the recital. *Texas & P. R. Co.* v. *Dashiell,* 198 U. S. 521, 49 L. ed. 1150, 25 Sup. Ct. Rep. 737; *Union P. R. Co.* v. *Artist,* 23 L. R. A. 581, 9 C. C. A. 14, 19 U. S. App. 612, 60 Fed. 365. The court committed no error in refusing to admit this document.

The remaining assignment of error necessary to be considered is to the effect that the court, by its instructions, took from the jury the determination of the question of defendant's negligence, and substituted for that issue the single inquiry as to whether or not the chimney was an unsafe device. The court, after delivering a general charge as to the duties of jurors, instructed the jury that "the plaintiff in this case charges the defendant with having caused the death of her husband by failure to provide safe appliances or place to perform the duties for which he was engaged. The law is that every employer must furnish a reasonably safe place and reasonably safe appliances for the doing of that particular work, whatever it is, whatever the vocation may be, whatever the environment may be. That is the law. One of the means of judging as to whether or not an appliance is safe or a place is safe in which the employee is to work is the fact that such appliances or such places are commonly used by persons engaged in the same character of business or vocation. That is one of the tests. So that if an employer furnishes a fair and reasonable appliance or place for his employee to work in, or work with, then that employer has performed the duty that is cast upon him to give to his employee a reasonably safe place to work in, and reasonably safe appliances to work with. * * * If you find from the evidence that the following are facts,—that each one of these subdivisions that I read to you are facts, namely,

"(1) That the plaintiff is administratrix of the estate of John J. Ball, deceased;

"(2) That said John J. Ball was employed by the defendant company at its garage and power plant in the District of Columbia on April 20, 1905;

"(3) That the defendant had installed at its said plant two internal combustion engines, using coal oil as fuel;

"(4) That the gases from said engines exhausted into pits beneath the engine room and then made their way into a brick chimney;

"(5) That said brick chimney as erected by defendant was

provided with 6 iron baffle plates and topped with a perforated iron pipe which was closed at the top by a solid iron cap;

"(6) That said baffle plates and capped pipe obstructed and retarded the flow of gases exhausted from the engines to the outer air;

"(7) That said chimney so designed and erected was an unsafe device at a plant of said character;

"(8) That by reason of its unsafe character an explosion occurred at said plant on April 20, 1905, demolishing the chimney;

"(9) That portions of said chimney fell into the engine room and upon said Ball and killed him;

"(10) That said Ball was not aware that said chimney was dangerous; and

"(11) That said Ball was not guilty of negligence which directly contributed to his death,—then your verdict should be for the plaintiff. If you find all the things that I have read to you to be facts and to have been established by the preponderance of the evidence, then this plaintiff is entitled to recover."

Then follow voluminous instructions on the burden of proof, assumed risk, and contributory negligence. The instructions, except as to the measure of damages, concluded with the following statement: "If you find from the evidence in this cause that this chimney—which seems to be the main thing here—was unsafe, and was the cause of the death of the deceased in this case, if you find it was caused by the falling of this chimney, and you further find that it was an unsafe and dangerous device, then the defendant in this case would be guilty of negligence in furnishing such a device. * * * Now, gentlemen, if you find in this case that the defendant was negligent in the character of place or instrumentality afforded to the deceased under the evidence and the law as the court has endeavored to make it plain to you, then the plaintiff would be entitled to recover. Of course if you find there was no negligence on the part of the defendant which caused the death of the deceased in this case, or, if you further find that

the deceased contributed to his own death, then of course your verdict should be for the defendant."

The court refused the following prayers, among others, requested by counsel for defendant: .

"2. The jury are instructed that the claim of the plaintiff rests upon the charge that the defendant was careless and negligent in erecting and using the brick exhaust stack described in the evidence, in connection with its engines, and that unless the jury shall find that the defendant, in erecting and using such exhaust stack, was careless and negligent, and failed to use such care as an ordinarily prudent man would have used under the circumstances, the plaintiff cannot recover.

"3. In determining the liability of the defendant, the jury are instructed that the defendant was not an insurer of the safety of the structure in question, and was not bound at all hazards to protect the plaintiff's intestate from injury while he was working therein, but was bound to take only such care in the adoption of the design for such stack and in the use thereof as an ordinarily prudent man would have taken in the premises."

It will be observed that the court failed to point out to the jury the essential elements to be considered in determining whether or not defendant had been guilty of negligence. This was error. Defendant's request, as disclosed in the prayers above cited, was addressed to this point, and was at least sufficient to call the court's attention to the necessity of giving a general instruction defining the duty of defendant in the premises, and charging that culpable neglect to perform its duty, as defined, should be regarded as proof of negligence.

The court in the instructions given limited the jury, in determining defendant's liability, to the consideration of the sole question of whether or not the chimney was an unsafe device. The jury was not permitted to pass upon the crucial issue in this case,—whether or not, if the chimney was found to be unsafe, the defendant had been guilty of negligence through failure to exercise that degree of care in its adoption and construction which the law imposes. The burden of establishing

negligence was upon the plaintiff, but the court eliminated this feature of the case by resolving the plaintiff's burden into a question of law. In other words, the defendant was held to be an insurer of the safety of the place where plaintiff's intestate was required to work. The question of whether or not defendant exercised reasonable care and prudence in constructing the chimney was withheld from the jury. The care exercised in the construction of the chimney; its ability to safely convey away the gas and smoke from the engines; whether or not the defects of the structure, if there were any, were so patent that defendant knew or ought to have known, and is therefore chargeable with knowledge, of the danger attached to its use; whether or not structures of this sort are commonly used for the purposes for which the one in this instance was constructed; whether or not the chimney, by reason of its peculiar construction, was a dangerous device; and whether or not defendant, in constructing this chimney, to be used in connection with its building and the engines and appliances therein, used reasonable care and prudence,—are all matters of fact to be considered by the jury in passing upon the question of defendant's negligence. From a consideration of all these facts, it was the duty of the jury to determine whether or not a reasonably prudent man would have acted as defendant did in the same circumstances.

Considering substantially the same evidence on the former appeal in this case (32 App. D. C. 177), we said: "The evidence produced by the plaintiff raised an issue of fact as to whether the defendant, in adopting the style of chimney that it erected, acted prudently or imprudently; whether the chimney was safe or dangerous; and whether, in adopting, installing, and maintaining this particular device, defendant was guilty of negligence." The rule as to the liability of employers is clearly stated in *Titus* v. *Bradford, B. & K. R. Co.* 136 Pa. 618, 20 Am. St. Rep. 944, 20 Atl. 517, as follows: "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but of negligence; and the unbending test of negligence in methods, machinery, and appliances is the ordinary usage of the business. No man is

held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same; and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way, for which liability shall be imposed."

Since an employer is not an insurer against danger, it follows that the danger must arise from his negligence before he will be liable. In the present case, plaintiff has confined her charge of negligence to the alleged unsafe character of the chimney. If, therefore, defendant used that degree of care that a reasonably prudent person would in erecting a device of this character, according to known, tried, and approved plans, it cannot be held liable for dangers attendant upon its use, unless they were such as were known, or ought to have been known, by it, and of which the decedent was ignorant. *Washington & G. R. Co.* v. *McDade,* 135 U. S. 554, 34 L. ed. 235, 10 Sup. Ct. Rep. 1044; *Patton* v. *Texas & P. R. Co.* 179 U. S. 658, 45 L. ed. 361, 21 Sup. Ct. Rep. 275.

It is insisted that a chimney constructed in this manner was something entirely new and unheard of by engineers and persons skilled in the erection of similar structures. Negligence may be involved in experiments with a new and untried device, but it by no means follows as a conclusion of law. If it be true that defendant was experimenting with this chimney, that is a fact to be considered by the jury in ascertaining whether it acted prudently or imprudently. If experiments with new structures and machinery, in case of accident arising from their use, were held to be more than mere facts to be considered in determining the negligence of the person charged with liability for the accident, progress in the various branches of mechanical industry would be greatly impeded, and industrial efficiency, through the use of improved appliances, would be seriously impaired. Employers of labor are constantly called upon to adopt

new appliances, and the wisdom of their action, when challenged, is always a question of fact.

An employer, before adopting and installing a new and untried appliance, is required to select that which seems to be the safest and most suitable for his purpose, and to consult the best available known sources of information for reliable advice as to the wisdom of the proposed experiment. A failure to take these precautions, should the device selected prove defective, and an accident occur from its use, will be regarded as proof of culpable negligence.

If the chimney was a new and untried experiment, defendant was required to exercise a much higher degree of care than would have been imposed upon it had the device been one in common use. On the other hand, if plaintiff's intestate was advised of the unusual character of the structure, he was required to use a higher degree of skill and care than would devolve upon him in using a tried and tested device.

There is no fixed rule as to the degree of care that is due the employee from his employer. It undoubtedly varies with the character of the employment. The question of whether or not the employer has discharged his full duty, however, is always one of fact. The employer is never a guarantor or insurer of the safety of his employee. If the danger attached to the employment is unusual, a higher degree of care is imposed upon the employer in the selection and instalment of appliances than would be required where the employment is less harzardous. The risks which the employee assumes, and which are implied in the contract of employment, are governed by a like rule. Though the degree of care varies with the hazard of the employment, the duty at all times devolves upon the employer of selecting and installing the best and safest appliances commonly used in the line of work in which he is engaged, and of exercising that degree of care for the safety of his employees which ordinary prudence requires of those engaged in the same line of business.

After a careful review of the record in this case, we are of opinion that the trial court committed reversible error in

failing to state clearly, by proper instructions, the law in respect to the duty imposed upon the jury of determining from the evidence whether or not defendant had been guilty of such negligence as would entitle plaintiff to recover. For this reason alone, the judgment is reversed, with costs, and the cause is remanded for a new trial.                    *Reversed.*