## Machine Shop Operations

THOMAS D. MCBRIDE, Attorney General, and LEON EHRLICH, Deputy Attorney General, January 6, 1958. —You have requested an interpretation of the Act of May 18, 1937, P. L. 654, as amended, 43 PS §§25-1 to 25-15. Specifically, you ask whether your department may promulgate a regulation prohibiting an employer from having a machinist operate machine shop equipment on the 11 p.m. to 7 a.m. shift without the presence of other personnel in the plant during those hours.

Section 12 of the act states that:

"Rules and Regulations.—The Department of Labor and Industry shall have the power and its duty shall be to make, alter, amend, and repeal rules and regulations for carrying into effect all the provisions of this act, and applying such provisions to specific conditions."

You, therefore, have the power to make rules and regulations to carry into effect all the provisions of the act.

However, since there is no specific provision in the act covering this situation, it is necessary to deter-

mine whether the contemplated action falls within the purview of one of the act's provisions generally, i.e., whether the proposed regulation would be a proper carrying into effect of one of the provisions of the act.

The aforesaid test must be applied to section 2(a), 43 PS §25-2(a) of the act which provides:

"General Safety and Health Requirements.—(a) All establishments shall be so constructed, equipped, arranged, operated, and conducted as to provide reasonable and adequate protection for the life, limb, health, safety, and morals of all persons employed therein."

Thus, to arrive at a conclusion, we must decide:

(a) Whether a machine shop is an "establishment" within the coverage of the act;

(b) Whether the act is broad enough to allow regulation of the number of persons required to be present in a machine shop at any particular time; and

(c) Whether the regulation itself is reasonable both as to being limited to machine shops and as to requiring the presence of more than one person present in the shop on the 11 p.m. to 7 a.m. shift.

As to (a), section 1 defines "establishment" as follows:

". . . any room, building or place within this Commonwealth where persons are employed or permitted to work for compensation of any kind to whomever payable, except farms or private dwellings, and shall include those owned or under the control of the Commonwealth, and any political subdivision thereof as well as school districts."

Clearly a machine shop falls into such category.

Concerning point (b) above, since a regulation dealing with the minimum number of persons required to be present in a plant involves the manner of *operation* and *conduct* of an establishment, it would be within section 2(a) of the act.

However, it is well established that "The exercise by an administrative agency of its rule-making function is . . . subject to various limitations arising out of the fact that the authority is a delegated legislative power, and one indispensable requirement is that the regulation shall be reasonable". *

It is true that it has been held by the Pennsylvania Supreme Court in interpreting section 2(a) of the act that:

"Section 2(a) of the Act of 1937 is merely declaratory of the common law duty to furnish a reasonably safe place to work. The rule and the reasons on which it is based were well stated by Justice (later Chief Justice) Mitchell in the case of Titus v. Railroad Company, 136 Pa. 618, 626, 20 A. 217, as follows: 'Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger but of negligence; and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man. The test of negligence in employers is the same, and however strongly they may be convinced that there is a better or less dangerous way, no jury can be permitted to say that the usual and ordinary way, commonly adopted by those in the same business, is a negligent way for which liability shall be imposed' ": Cool, Appellant v. Curtis-Wright, Inc., 362 Pa. 60, 63.

However, this case, as do others dealing with section 2, merely fixes a standard of care in determining whether the employer has been negligent in the operation of his establishment. That is not the same as de-

---

\* Jenkins Unemployment Compensation Case, 162 Pa. Superior Ct. 49 (1948).

18

termining a standard of conduct for the *prevention* or amelioration of accidents. It would appear that under the broad general police power, out of which this act stems, the State and its agencies could use not the "ordinary prudent man" test of negligence, but a higher standard of care in an effort both to *avoid* accidents or lessen the severity of an accident. This, it is submitted, is reasonable and in conformity with the stated purpose of the act, for section 2(*a*) specifically refers, inter alia, to conduct and operation necessary to provide *reasonable* and *adequate protection*, thereby clearly enunciating the test of reasonableness.

You must, considering the statutory and judicial mandate (a) to effectuate the intent of the legislature, (b) to give a liberal interpretation to a remedial statute, and (c) the basic rule in the promulgation of regulations that they must be reasonable, study the facts in your possession. If the information available leads you to conclude that the incidence of injuries in machine shops as compared with the accident rate in other industries warrants special attention; that the incidence of injuries to machinists is greater in the 11 p.m. to 7 a.m. shift than during other periods, and, further, that such greater severity or incidence of injuries could be avoided or measurably reduced by having other employes or supervisors present in the plant during those hours (or viewed another way, that the likelihood is that the number and severity of accidents would be reduced were others present); then a regulation to require such additional personnel would be reasonable in carrying out the provision of section 2(*a*) of the act.

We are, therefore, of the opinion, and you are accordingly advised that you have the authority to promulgate such a regulation as you suggest, pro-

vided you have made the necessary, supportable factual determinations referred to in the previous paragraph. It is further recommended that you submit such regulation to this department for review as to legality prior to its promulgation, as provided by the terms of section 21 of the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended, 71 PS §1710.21.