to revive is therefore denied, and the appeal is ordered stricken from the docket.

---

St. Louis, Iron Mountain & Southern Railway Company
v. Swaim.

Opinion delivered November 4, 1912.

1. Master and servant—defective appliance—effect of promise to repair.—Where the master or a vice principal of the master promises to repair a defective appliance, a servant has a right to rely upon such promise and does not assume the risk therefrom during the time specified for the repairs to be made.   (Page 226.)

2. Same—defective appliance—promise to repair.—The time specified to make repairs of a defective appliance can not be said to have expired, so far as relieving the servant from the assumption of the risk of the danger is concerned, before the servant has an opportunity to know that the repairs have not been made.   (Page 227.)

Appeal from Lonoke Circuit Court; *Eugene Lankford,* Judge; affirmed.

STATEMENT BY THE COURT.

This suit was brought by appellee for damages for a personal injury, resulting virtually in the loss of his left eye, it was alleged, by the negligence of the defendant.

It was alleged that the injury resulted on account of the failure to properly screen or shield the glass water gauge or indicator upon the engine. The appellant denied any negligence, and pleaded contributory negligence and assumption of risk of appellee in bar of the action.

The facts are substantially that George C. Swaim, a locomotive fireman, twenty-seven years of age, began work for appellant in that capacity on October 5, 1911, and had worked one day before the injury on the second night. He noticed that the water glass indicator had one of these shields made of bars or strips of metal, and that one of the strips was out. He complained to the engineer that it ought to be fixed, and the engineer said that he would have it attended to. The next time he took the engine to the roundhouse, and put it on the cinder pit, and, returning, told the engineer that the

water glass had not been fixed, and he replied: "I am going to attend to that, and have it fixed in the morning."

Appellee was called at 7 o'clock the next night for same engine, and the roundhouse foreman sent him to relieve the crew in the yards. When he got on the engine, he discovered that the glass had not been shielded or screened, and he told the engineer again that it should be done, and that it wouldn't take two minutes to fix it, saying further: "Now, I have told you about that as much as I am going to tell you, and if you don't have it fixed at 12 o'clock I am not going to work on this engine," to which the engineer replied that he would surely have it fixed. Appellee then went to his supper, and upon his return he was standing up in the engine and struck a match, and the water glass exploded, and the steam blew into his face and eyes. This occurred about 12:50 A. M., and was the first time the appellee had been on the engine since he announced his determination to quit at 12 o'clock if it wasn't fixed, and received the assurance that it would be fixed.

The testimony was conflicting as to the extent of the injury, appellee claiming that the sight of his eye was virtually destroyed by a piece of glass that struck and stuck in it and had to be removed. The surgeon, who he claimed removed the glass, denied that any piece of glass was taken from his eye, and others attributed its condition to a disease that he had had. He was earning about $90 per month at the date of the injury, and had not been able to work much since that time up to the trial, three months later, and his eye was still inflamed at the time of the trial, and he had suffered a great deal of pain on account of the injury, which was probably permanent.

It was the duty of the engineer to remedy the defect complained of, or report it to the master mechanic and have it done. Some of the witnesses also testified that the shields or screens were put upon the water guage for its protection from breakage and not for the protection of employees working upon the engine, while others stated that the glasses frequently exploded, sometimes without any apparent cause, and that the shield or screen was for the protection of the employees, and. that a wire screen was much better than a shield with the bars.

The jury returned a verdict for the appellee, and from the judgment the railroad appealed.

*Thos. B. Pryor,* for appellant.

The decision of this court in *Railway* v. *Wells,* 93 Ark. 153, is conclusive of this case under the facts in evidence, and the court erred in not directing a verdict for the defendant. 93 Ark. 153, 155, and cases cited; 77 Ark. 367.

*Trimble, Robinson & Trimble,* for appellee.

The facts. differentiate this case from the Wells case, in that appellee reported the defect to the engineer in charge, who was the proper party to whom to report, and that the latter promised to repair the defect. Appellee had the right to rely upon that promise without being chargeable with assuming the risk. 98 Ark. 217; 90 Ark. 567; Labatt on Master & Servant, 727; *Id.* 740.

Kirby, J., (after stating the facts). It is contended that the facts in this case bring it within the decision in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Wells,* 93 Ark. 153, and that the court erred in not directing a verdict for appellant.

In that case the injury resulted from the explosion of the feed glass to the lubricator, which was not protected or guarded by any shield or screen, about which there was no complaint and no promise to repair made, and it was held that the servant had assumed the risk. This case differs materially in this: The water glass had been incased or protected with a shield, from which one of the bars was broken or lost, leaving the glass exposed. Appellee, upon going to work upon this engine, immediately discovered the defective condition of the shield and complained at the time to the engineer that it should be remedied and ought to be protected by a wire screen shield. He was assured that it would be done that day, and continued at work. He later complained again that it had not been done, and received the same assurance that it would be attended to shortly, and on the night of the injury, upon first going to the engine, he discovered that it had not been repaired, immediately complained to the engineer that it had not been, and said if it wasn't fixed at 12 o'clock that night that he would not longer continue to work upon the engine. He was again assured that it would be attended

to, and, upon his returning to the engine after 12 o'clock at night, when he believed, as he said, that it had been repaired, as he was promised it should be, upon striking a match to see how the water was in the boiler, the explosion occurred, injuring his eye permanently, if his claim as to the injury be true, and the jury believed it was.

It is not disputed that the promise to repair was made by the engineer, whose duty it was to either make the repairs or to have them done.

"The effect of a promise to repair by the master, and of the continuance in his service by the servant, in reliance upon the promise, is to create a new stipulation, whereby the master assumes the risks impendent during the time specified for the repairs to be made. Where no definite period is specified in which the given defects are to be remedied, the suspension of the master's right to avail himself of the defense of assumption of the risk by the servant continues for a reasonable time. * * * For it can not be said that the servant has voluntarily assumed the risk of the impending danger of working in an unsafe place, or of the use of obviously defective appliances furnished by the master, where the servant has complained to the master of such defective conditions and agrees to and does continue in his service upon the promise of the master within the time specified, or a reasonable time, if none is specified, to restore the place or appliances to normally safe conditions." *St. Louis, I. M. & S. Ry. Co.* v. *Holman,* 90 Ark. 565.

Appellee had the right to rely upon this promise to repair without assuming the risk for the time specified, and it was not denied that the promise was made, nor that the injury occurred upon his first use of the appliance after the time in which it was agreed to be repaired had expired and before he could have known that the repairs had not been made and just as he had discovered that fact. The time specified for the making of the repairs can not be said to have expired, so far as relieving him from the assumption of the risk of the danger is concerned under the circumstances of this case, before he had an opportunity to know that the repairs had not been made, even though the hour fixed upon had passed. *A. L. Clark Lumber Co.* v. *Johns,* 98 Ark. 218.

Finding no prejudicial error in the record, the judgment is affirmed.